[S. F. No. 11802. In Bank.—February 18, 1926.]

## FRANK J. SULLIVAN Petitioner, v. FRANK H. DUNNE, as Judge, etc., Respondent.

[1] GUARDIAN AND WARD — PROCEDURE — JURISDICTION. — At common law, proceedings in matters of guardianship of insane and incompetent persons were in the court of chancery, but, in this state, such proceedings are in probate; and section 1763 of the Code of Civil Procedure, prescribing the methods to be followed in matters of guardianship of insane and incompetent persons and the powers of the courts in such proceedings, gives a broad discretion, quite analogous to that vested in courts of chancery, to conserve the best interest of their wards.

[2] ID.—INCOMPETENCY — LIABILITY TO BE IMPOSED UPON — APPOINTMENT OF GUARDIAN.—In such proceedings the courts will zealously guard and scrupulously conserve the interests of the incompetent; and, under section 1767 of the Code of Civil Procedure, the appointment of a guardian is proper where it appears that the alleged incompetent is for any reason mentally unable, unassisted, to properly take care of himself or manage his property and

---

1. See 14 Cal. Jur. 354; 14 R. C. L. 568.
2. See 14 Cal. Jur. 357.

by reason thereof would be likely to be deceived or imposed upon by artful or designing persons.

[3] ID.—AUTHORITY OF ATTORNEY TO REPRESENT INCOMPETENT—PROVINCE OF TRIAL COURT.—In a proceeding for the appointment of a guardian of an alleged incompetent person, the solution of the question whether a certain attorney, who purports to represent the alleged incompetent. by interposing a demurrer to the petition for the appointment of a guardian and by filing a notice of appeal from the order appointing the guardian and causing a transcript to be prepared under the alternative method, acts with authority from his alleged client must rest with the trial court.

[4] ID.—APPEARANCE OF ATTORNEY—PRESUMPTION OF AUTHORITY—UNAUTHORIZED ACTS.—The fact that an attorney appears on behalf of a party raises a presumption of authority on his part to do so; but this presumption is disputable, and where it is shown that the attorney was not authorized, the party whom he assumed to represent can found no rights upon the unauthorized act.

[5] ID.—AUTHORITY TO REPRESENT CLIENT IN DIFFERENT PROCEEDING. The fact that an attorney may possess the necessary authority to represent a client in one case is not evidence of his authority to represent him in another and distinct proceeding.

[6] ID.—INABILITY TO CARE FOR PROPERTY OR SELF—FINDINGS—EVIDENCE.—In this proceeding for the appointment of a guardian of an alleged incompetent, the evidence showing that some two months prior to the filing of the petition the alleged incompetent suffered a hemorrhage of the left ventricle of the brain and that the right side thereof within a very short time likewise became affected, coupled with the evidence showing the effect thereof upon his mental and physical condition, was legally sufficient to support the conclusion of the trial court that the alleged incompetent had become mentally unable, unassisted, to properly care for and manage his property or himself and that it would be likely that he would be deceived or imposed upon by artful or designing persons.

[7] ID. — INCAPACITY OF CLIENT — TERMINATION OF ATTORNEY'S AUTHORITY.—Under section 2356, subdivision 3, of the Civil Code, the power of an agent is terminated as to any person having notice thereof by the incapacity of the principal to contract, and this rule is applicable to the relation of attorney and client; and, therefore, the insanity or incapacity of the client will operate as a termination of the authority of the attorney.

3.  See 3 Cal. Jur. 645.
4.  See 3 Cal. Jur. 647; 2 R. C. L. 980.
5.  See 2 R. C. L. 979.
7.  See 1 Cal. Jur. 699; 21 R. C. L. 822.

[8] ID.—RIGHT OF APPEAL—GUARDIAN AD LITEM—VALIDITY OF JUDG-
MENT—PRESUMPTION.—If an alleged incompetent has not become
so mentally enfeebled that he cannot understand the nature of
the guardianship proceeding, he is entitled to the benefit of an
appeal from the decree declaring him incompetent and appoint-
ing a guardian of his person and estate, in his individual capacity
and without the necessity of the intervention of a guardian *ad
litem;* but if he has become so mentally destitute as to lack that
degree of understanding, it must be presumed in support of the
validity and the regularity of the findings of the probate court
that the institution of the guardianship proceeding had become
essential to the protection of his person and the preservation of
his estate.

[9] ID.—UNAUTHORIZED APPEARANCE—AMICUS CURIAE.—If an attorney
is not authorized by any enforceable agreement or contract of
employment to represent an alleged incompetent in the proceed-
ings for the appointment of a guardian of the person and estate
of the latter, said attorney cannot urge such right of representa-
tion as *amicus curiae.*

[10] ID.—UNAUTHORIZED APPEAL—INEFFECTUAL NOTICES—REFUSAL TO
CERTIFY TRANSCRIPT.—Where an attempted appeal from a decree
declaring a person incompetent and appointing a guardian of his
person and estate is taken by an attorney without authority from
the incompetent, the filing by said attorney of the notice of ap-
peal and the filing by him of a notice for the preparation of the
record under the alternative method are ineffectual, and the trial
judge is justified in refusing to certify the transcript on behalf
of said attorney.

(1) 15 C. J., p. 1011, n. 75; 32 C. J., p. 626, n. 87, p. 628, n. 21,
23, p. 629, n. 37, p. 658, n. 64; 38 C. J., p. 565, n. 24, p. 614, n. 9,
p. 905, n. 64.    (2) 32 C. J., p. 631, n. 91.    (3) 6 C. J., p. 637, n. 42.
(4) 6 C. J., p. 631, n. 73 New, 76, p. 633, n. 80.    (5) 6 C. J., p. 637,
n. 39.    (6) 32 C. J., p. 631, n. 91.    (7) 2 C. J., p. 552, n. 77;
6 C. J., p. 637, n. 50, p. 676, n. 16.    (8) 32 C. J., p. 661, n. 48,
p. 679, n. 8.    (9) 2 C. J., p. 1325, n. 52 New; 6 C. J., p. 654, n. 63
New; 32 C. J., p. 663, n. 99.    (10) 6 C. J., p. 631, n. 73 New; 32
C. J., p. 661, n. 47.

PROCEEDING in Mandamus to compel Frank H. Dunne,
Judge of the Superior Court of the City and County of
San Francisco, to certify a record prepared under the alter-
native method. Peremptory writ denied.

8.   See 14 Cal. Jur. 359.
10.   See 2 Cal. Jur. 635.

The facts are stated in the opinion of the court.

Robert P. Troy for Petitioner.

Cushing & Cushing for Respondent.

SEAWELL, J.—This is an original proceeding in *mandamus* to compel the respondent, Honorable Frank H. Dunne, as judge of the superior court in and for the city and county of San Francisco, to certify a reporter's transcript prepared in accordance with section 953a et seq. of the Code of Civil Procedure, on an appeal from an order and decree adjudging Frank J. Sullivan, the alleged petitioner herein, to be an incompetent and appointing as guardians of his person and estate (consisting of property of the value of about two million dollars) his children, Noel Sullivan and Gladys S. Doyle. Said appeal was attempted to be perfected by Robert P. Troy, Esq., who, as he claims, was at all times herein mentioned the attorney for the said incompetent.

It appears from the application herein that on the eighth day of May, 1925, Noel Sullivan and Gladys S. Doyle filed in the respondent court their verified petition, alleging the incompetency of the said Frank J. Sullivan, and prayed that they be appointed guardians of his person and estate. Thereafter, on May 14, 1925, the said Robert P. Troy, Esq., appeared in opposition to the petition, and at the same time, alleging himself to be the attorney for the said Frank J. Sullivan, purported to file a demurrer and a notice of a motion to strike the said petition from the files. Said attorney had made no prior appearance in the cause and based his authority to so represent the said Frank J. Sullivan in all matters therein pending upon an authorization which he claimed the said Frank J. Sullivan had executed about six months prior to his incompetency. It is also alleged that he is at the present time acting as the attorney for the said Frank J. Sullivan in the case entitled *Phelan* v. *All Persons,* S. F. No. 11565, pending in this court and which will again be referred to. On May 18, 1925, Noel Sullivan and Gladys S. Doyle served upon the said Robert P. Troy a notice of a motion supported by affidavits striking the demurrer and motion theretofore interposed by the latter from the files,

for the reason that the said Robert P. Troy had not been authorized by said Frank J. Sullivan to appear for him in said cause or authorized to file on his behalf said demurrer or motion and that he wilfully and without authority appeared for said Frank J. Sullivan therein, and finally, that there was no authority in law for the filing of a motion, demurrer, answer, or other opposition of any kind to the petition. On the eighth day of June, 1925, the respondent struck from the files the demurrer and motion of the said Robert P. Troy, on the grounds "that said Robert P. Troy had no authority from Frank J. Sullivan, to file on his behalf either said demurrer or said notice of motion to strike out said petition and that said Robert P. Troy wilfully and without authority appeared, or attempted to appear, for a party in said proceeding, to wit, for Frank J. Sullivan, . . . " At the same time the respondent judge refused to make an order permitting the latter to visit and consult with the said Frank J. Sullivan on account of his physical and mental condition and also denied his application for a trial by jury. The court thereupon declined to recognize said Robert P. Troy as an attorney in the proceedings, proceeded to a consideration of the merits and at the conclusion thereof, found that the said Frank J. Sullivan had been personally served with notice and a citation of the proceeding (sec. 1763, Code Civ. Proc.), and that since the tenth day of March, 1925, he was, on account of old age, paralysis, and weakness of mind, unable, unassisted, to properly manage or take care of himself or his property, and by reason of his condition was likely to be deceived and imposed upon by artful and designing persons. It thereupon ordered, adjudged, and decreed that the petition of Noel Sullivan and Gladys S. Doyle be and the same was granted. Entry of judgment was made on June 15, 1925, but Troy averred that he had never been served with a notice of the entry thereof and that he had no knowledge of the entry of the same until he voluntarily examined the records on August 4, 1925. He attempted to file a notice of appeal therefrom on August 7th, and at the same time filed a notice to the clerk to prepare a record in accordance with section 953a of the Code of Civil Procedure. After the preparation of the record and the forwarding of the five-day notice to the attorneys by the clerk, it was presented by the said Robert P. Troy to

the respondent for certification.  On motion of the said Noel Sullivan and Gladys S. Doyle, respondent refused to certify the same for the reasons that the said Robert P. Troy had no authority to file said notice of appeal from said order granting the petition for guardianship; that said Robert P. Troy had no authority to file a notice and request to the clerk of said court to make up and prepare said transcript or to appear for the said Frank J. Sullivan in any proceeding for the settlement thereof, and that said Robert P. Troy had no right to have a record on appeal from said order granting said letters of guardianship prepared for the reason that the orders striking from the files had not been appealed from within the time allowed by law.  Hence this proceeding.

In response to the issuance of an alternative writ duly issued herein, the respondent interposed both a demurrer and an answer, wherein he admitted that a notice of appeal had been filed in said court, but alleged the fact to be that the making or filing of said notice was not the act of the said Frank J. Sullivan, but was the act of the said Robert P. Troy alone; that he appeared in the said proceeding wholly without the authority of the said Frank J. Sullivan; that respondent had no information or belief sufficient to enable him to answer the allegations relative to a prior authorization of the said Robert P. Troy, but alleged in respect thereto that such an appointment was inherently and wholly improbable in the nature of things and that he was unwilling to find as a fact that the said Robert P. Troy had ever been so authorized and that he was warranted in finding as a fact that said Troy had no authority to appear in said cause or proceeding; that if any antecedent authorization or employment existed, it had been wholly canceled and terminated by the total incapacity of the said Frank J. Sullivan on the tenth day of March, 1925, of which the said Robert P. Troy had full knowledge.

The contentions advanced by the said Troy in support of the issuance of the writ are that the finding of the court that "he appeared wilfully in the cause and without the authority of the said Frank J. Sullivan" should not be affirmed in view of the presumption that he was acting in accordance with and by force of a prior authorization from the latter, and that the proceeding by virtue of the perfection

of the appeal had been transferred to this court, notwithstanding the fact that the appeal may not, have been filed by an attorney duly authorized by his client, and that it was the duty, therefore, of the respondent to certify the transcript. Inasmuch as all objections which might have been urged against the certification of the transcript have been waived except those specifically set out by the said Noel Sullivan and Gladys S. Doyle and adopted by the court as a justification for its refusal to certify the same (*Pierce* v. *Works,* 171 Cal. 684 [154 Pac. 852]), and in view of our conclusion that the third assigned reason is without merit, inasmuch as the attempted appeal has been taken from the order granting letters of guardianship (sec. 963, subd. 3, Code Civ. Proc.; 13 Cal. Jur. 167) rather than from the intermediate and interlocutory orders striking the demurrer and motion from the files, which were neither final nor appealable (*Wood, Curtis & Co.* v. *Missouri etc. Ry. Co.,* 152 Cal. 344 [92 Pac. 868]), we pass at once to the consideration of the question whether the first two grounds assigned by the respondent and attacked by the said Robert P. Troy are legally sufficient to justify the former's refusal to certify the transcript. We are of the opinion that they are.

[1] At common law the king, as *parens patriae* and fountain of justice, is the general protector of all infants, idiots, and lunatics. But the chancellor, in his quality of keeper of the king's conscience, in this respect fully represented the crown, and thus acted in the general guardianship of all infants, idiots, and lunatics, the king delegating his authority to avoid application to him in person. But the superintendence of the trust, when the fact of lunacy is ascertained and a proper custodian of the insane person and of his estate appointed, is a part of the general jurisdiction of the court of chancery. (Woerner on American Law of Guardianship, pp. 2–4.) Such proceedings in this state, however, are in *probate.* (*In re Bundy,* 44 Cal. App. 466 [186 Pac. 811]; 14 Cal. Jur. 354.) Nevertheless, section 1763 of the Code of Civil Procedure, prescribing the methods to be followed in matters of guardianship of insane and incompetent persons and the powers of the courts in such proceedings, gives a broad discretion, quite analogous to that vested in courts of chancery, to conserve the best interests of their wards. (*In re Crocker,* 174 Cal. 660 [163

Pac. 1015].) **[2]** In such proceedings the courts, indeed, will zealously guard and scrupulously conserve the interests of the incompetent. Under section 1767 of the Code of Civil Procedure, the appointment of a guardian is proper where it appears that the alleged incompetent is for any reason mentally unable, unassisted, to properly take care of himself or manage his property and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons. (*Estate of Schulmeyer,* 171 Cal. 340 [153 Pac. 233].) **[3]** In the determination of this cause the issue arose at the time of the disposition of the order striking the demurrer and motion from the files and at the time of the certification of the record on appeal, whether the said Robert P. Troy acted with authority from his alleged client. The trial court found and adopted its conclusion thereon, as a basis and justification for its refusal to certify the record, that it was inherently and wholly improbable that there ever existed a prior appointment authorizing the said Robert P. Troy to represent the incompetent in the cause. The solution of the question must rest in this case, as in any other, with the trial court. (*Estate of Schulmeyer,* 171 Cal. 340 [153 Pac. 233].) **[4]** The fact that an attorney appears on behalf of a party raises a presumption of "authority upon his part to do so." But this presumption is disputable, and where it is shown, as it is here, that the attorney was not authorized, the party whom he assumed to represent can found no rights upon the unauthorized act. (*Title Ins. & Trust Co.* v. *California Development Co.,* 168 Cal. 397 [143 Pac. 723].) **[5]** The claim that the said Robert P. Troy is at the present time representing the said Frank J. Sullivan in a cause now pending in this court, entitled *Phelan* v. *All Persons, supra,* in which the latter is the appellant, is of no moment in this case. The fact that an attorney may possess the necessary authority to represent a client in one case is not evidence of his authority to represent him in another and distinct proceeding. Whether the interests of the guardians and the incompetent herein will be necessarily antagonistic or adverse to the faithful performance of their duties in that proceeding does not appear, but if such adversity of interests should arise, it may then become the duty of the probate court to remove the former and substitute other competent

persons in their stead. (Sec. 253, subd. 5, Civ. Code.) Furthermore, section 251 of the Civil Code provides that "in the management and disposition of the person or property committed to him, a guardian may be regulated and controlled by the court."

[6] The court further found, and alleged in its answer, that if any antecedent employment authorizing an appearance of the said Robert P. Troy for or on behalf of the said Frank J. Sullivan in this proceeding existed, the same and the relationship of attorney and client upon which it was based had become wholly canceled and terminated by the total incapacity of the said Frank J. Sullivan on March 10, 1925, of which the said Robert P. Troy had full knowledge. There is not the slightest doubt but that the said Frank J. Sullivan is now and since March 10, 1925, has been an incompetent person. The court found that the latter had become mentally unable, unassisted, to properly care for and manage his property or himself and that it would be likely that he would be deceived or imposed upon by artful or designing persons. (*Estate of Schulmeyer, supra.*) In support of the petition for letters of guardianship affidavits were introduced by Noel Sullivan and Gladys S. Doyle. Other documentary evidence, such as affidavits of the attending physicians and others, was introduced upon the motion to dismiss the instant appeal, all of which is, in the main, reproduced and discussed by counsel in the closing brief filed in this case. Said affidavits establish the fact that on March 10, 1925, the said Frank J. Sullivan suffered a hemorrhage of the left ventricle of the brain and that the right side thereof within a very short time likewise became affected; that since that time the said Frank J. Sullivan has been unable to speak, write, talk, or communicate in any way with any person; that his mind since said time and by reason thereof has become a "complete blank"; that he has been unable to use his limbs or to care for himself or to exercise any of his faculties; that he is absolutely helpless and at all times since said time has been compelled to require assistance to enable him to eat and drink and has likewise been unable to sit up or stand alone; that on June 8, 1925, he was removed to Santa Cruz in the hope and expectation that the climate there would be beneficial to his health; that at all times since said 10th of March,

1925, he has been "of profoundly unsound mind." This evidence, in addition to other circumstances appearing herein, is legally sufficient to support the conclusion of the respondent. Not only is this true, but there is not the slightest statement or suggestion of substantial value contradicting or controverting the showing made by the guardians as to the utter helpless physical condition and general insanity of the said Frank J. Sullivan. Counter-affidavits interposed by the said Robert P. Troy are wholly lacking in material substance and for the most part constitute mere conclusions of the affiant, inasmuch as it is alleged therein that the latter has neither seen nor communicated with the said Frank J. Sullivan since March 10, 1925.

[7] It is the statutory rule in this state that the power of an agent is terminated as to any person having notice thereof by the incapacity of the principal to contract. (Sec. 2356, subd. 3, Civ. Code; *San Francisco Credit Clearing House* v. *MacDonald,* 18 Cal. App. 212, 216 [122 Pac. 964].) It is also well recognized by the authorities that the law of principal and agent is generally applicable to the relation of attorney and client (1 Weeks on Attorneys at Law, sec. 216), and that the insanity or incapacity of the client will, therefore operate as a termination of the authority of the attorney. (1 Thornton on Attorneys at Law, p. 236; 1 Am. & Eng. Ency. of Law, 1226; *In re Stenton,* 53 Misc. Rep. 515 [105 N. Y. Supp. 295]; *Merritt* v. *Merritt,* 27 App. Div. 208 [50 N. Y. Supp. 604]; *Joost* v. *Racher,* 148 Ill. App. 548; 6 C. J. 676.; *Chase* v. *Chase,* 163 Ind. 178 [71 N. E. 485].)

The case of *Chase* v. *Chase, supra,* likewise involved a proceeding in *mandamus* and presented facts not dissimilar to those appearing in this proceeding, and the court there stated, in answer to similar contentions herein advanced, that:

"Although it appears to be a controverted question whether the intervening insanity of a principal operates *per se* as a revocation of the agency, as against third persons who have, without knowledge of such insanity, and before an inquest, dealt with the agent on the assumption that the prior authority still existed, yet we apprehend that no authority can be found which sanctions, as between the principal and agent, the right of the latter to act where he has full knowledge of the principal's insanity. Indeed, the doctrine that

the insanity of the principal *per se* terminates the agency is stated in unrestricted terms by most of the text-writers. . . . This is generally put upon the ground, where a reason is assigned, that the derivative authority cannot continue beyond the time when the principal might himself lawfully act in the premises. . . .

"We must assume, to give the agreement operation, that it was intended to provide for circumstances which afterward existed, wherein the client was too insane to request counsel to defend him, or to exercise any act or authority over the litigation. Indulging the assumption indicated, the agreement was contrary to public policy, as it is incompetent for an attorney to bargain for an authority which enables him, at his own discretion, and without let or hindrance from any one, to carry a defense to the limits of the law."

[8] We may add to what has already been said, that if the said Frank J. Sullivan had not become so mentally enfeebled but that he could have understood the nature of the guardianship proceeding herein, he would have undoubtedly been entitled to the benefit of an appeal from the decree in his individual capacity and without the necessity of the intervention of a *guardian ad litem.* (*In re Moss,* 120 Cal. 695 [53 Pac. 357].) If, however, he has become so mentally destitute as to lack that degree of understanding, it must be presumed in support of the validity and the regularity of the findings of the respondent, that the institution of the guardianship proceeding had become essential to the protection of his person and the preservation of his estate. In either proceeding or on appeal therefrom, an appearance or attempted appearance by the said Robert P. Troy, as the alleged attorney of the incompetent, would have been without authority of law.

It may be pertinent to here point out that this particular proceeding is not, and bears no relation to, a proceeding instituted under the provisions of the general and comprehensive act defining the powers and duties of the state commission in lunacy and providing for the "care, custody, apprehension, commitment, and maintenance of insane persons and other incompetents" (Stats. 1903, p. 485, approved March 26, 1903), and which act has been subsequently amended and supplemented. That act provides the

198 Cal.—13

procedure that must be observed in the determination of the question whether or not any person who is alleged to be insane is so far mentally disordered in mind as to endanger health, person, or property and therefore a fit person for commitment to a state hospital for the insane. The rights of alleged insane persons are fully set out in said act, including the right to be represented by counsel, if desired, and if finally committed and dissatisfied with the order of commitment, the right is given to such person to have the question of his insanity tried by a jury if a demand is made therefor within five days thereafter. But this is not such a proceeding. Under guardianship proceedings no purpose of confinement is contemplated. In fact, the adjudication of incompetency in this proceeding would not justify a commitment of Frank J. Sullivan to a state hospital for the insane. And this would be so even if the court had pronounced him insane. The only thing determined in a proceeding of this kind is that a guardian should be appointed by reason of incompetency. Incompetency, is but a preliminary step, but necessary to support the order appointing the guardian. (*In re Moss, supra*.)

[9] Upon a full consideration of the matter we feel satisfied that the court's finding that said Robert P. Troy was not authorized by any enforceable agreement or contract of employment to represent the alleged incompetent in the proceedings had in the court below must be sustained. He does not and could not urge such right of representation as *amicus curiae*. The petitioners for letters of guardianship are son and daughter respectively, of the incompetent and there appears to be no reason why their good faith should be questioned or suspected. All other things being equal, the law would prefer them as guardians and ministers of his temporal affairs over strangers to his blood.

[10] It appearing that the attempted appeal has been taken by Robert P. Troy on behalf of the said Frank J. Sullivan, but without authority from him, the filing of the notice of appeal and the notice for the preparation of a record under the authority of section 953a of the Code of Civil Procedure was ineffectual (*Title Ins. & Trust Co. v. California Development Co., supra*), and since the said Robert P. Troy has no authority to perfect an appeal from the decree in his individual capacity (sec. 938, Code Civ.

Proc.; 2 Cal. Jur. 215, 216), the respondent was, therefore, justified in refusing to certify the transcript on his behalf.

The alternative writ heretofore issued will be dismissed and the application for a peremptory writ is denied.

Richards, J., Shenk, J., Lawlor, J., Curtis, J., Waste, C. J., and Lennon, J., concurred.

Rehearing denied.