[L.A. No. 30309. In Bank. Dec. 3, 1974.]

ERNEST JAMES SARRACINO, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DOROTHY DARLINGTON SARRACINO et al., Real Parties in Interest.

**COUNSEL**

Huston T. Carlyle for Petitioner.

John H. Larson, County Counsel, and Robert C. Lynch, Assistant County Counsel, for Respondent.

A. Tod Hindin and Hindin & McKay for Real Parties in Interest.

**OPINION**

**WRIGHT, C. J.**—Petitioner Ernest James Sarracino seeks a writ of mandate to compel vacation of orders rendered against him by a superior court commissioner presiding as temporary judge at a consolidated hearing on applications for temporary support and related relief in (1) a proceeding for dissolution of marriage brought by petitioner's wife, Dorothy Sarracino, and (2) an action for support brought by petitioner's adult daughter, Jane Sarracino, by her guardian ad litem, Dorothy Sarracino. Having failed to appear at the hearing, petitioner challenges the commissioner's power to act as temporary judge on the ground that the required "stipulation of the parties litigant" (Cal. Const., art. VI, § 21) was signed only by the wife and guardian ad litem. Petitioner also questions the authority of the guardian ad litem to act in the absence of any adjudication of the daughter's incompetency apart from the order granting the guardian ad litem's ex parte petition for appointment under Code of Civil Procedure sections 372 and 373, subdivision 3.

On November 24, 1972, petitioner was personally served in both the dissolution proceeding and the support action with summonses, initial pleadings, and notices of a hearing to be held on December 4, 1972, on the wife's and daughter's respective applications for temporary support. Petitioner did not appear at the hearing, which proceeded before the commissioner on the date stated in the notices. Stipulations for the appointment of the commissioner as temporary judge in each matter were signed by Dorothy Sarracino and her counsel; she was sworn and testified; and the commissioner rendered the orders now before us.[1] Thereafter petitioner

---

[1]The two orders are combined in a single entry in the court's minutes. In addition to requiring temporary monthly support payments for the wife and adult daughter, the orders require petitioner to pay a sum for attorney's fees and costs in the dissolution action and restrain him from certain acts including unconsented entry of the family residence and disposition of community property outside the ordinary course of business.

appeared by filing responsive pleadings in both matters and moved to vacate the orders.[2] These motions were denied by a judge of respondent court.[3] An alternative writ of mandate issued requiring the granting of the motions to vacate unless good cause is shown to the contrary.[4]

Petitioner challenges the respondent court's jurisdiction to make the temporary support orders on two grounds: (1) that the stipulation was ineffective to empower the commissioner to act as temporary judge in either matter because it was not signed by petitioner, who claims to have been a party litigant (Cal. Const., art. VI, § 21) at the time of the hearing because his time to file a pleading after service of summons had not yet expired; and (2) that the order appointing Dorothy Sarracino as Jane Sarracino's guardian ad litem was void because of an alleged lack of adjudication of Jane's incompetency. For reasons which follow we conclude that neither objection is valid.

### Sufficiency of Stipulation to Authorize Commissioner to Act as Temporary Judge

Court commissioners are appointed under the authority of section 22 of article VI of the California Constitution which permits the Legislature to provide for the appointment by trial courts of record of commissioners "to perform subordinate judicial duties." However, a major part of the assistance which commissioners give to the courts is rendered not in performing subordinate judicial duties under article VI, section 22 but in

---

[2]Petitioner filed his response to the petition for dissolution (Cal. Rules of Court, rule 1282) on April 30, 1973, and his answer to the complaint for support on July 13, 1973.

The answer to the petition for the writ alleges that on May 18, 1973, over one month before petitioner gave notice of his motions to vacate, he filed a notice of motion for relief from the "default" taken against him on December 4, 1972, on the ground that the temporary support orders were rendered against him on that date "through his mistake, inadvertence, surprise or excusable neglect" (Code Civ. Proc., § 473), and attached as an exhibit a proposed response to the order to show cause and notice of motion by which the temporary support proceedings were initiated. It is stated in the brief of the real parties in interest in opposition to the petition that the motion for relief from default was denied on May 30, 1973.

[3]The notices of these motions to vacate the temporary support orders on jurisdictional grounds were filed on June 28, 1973, and the motions were denied on August 20, 1973. Contempt proceedings to enforce the orders were thereafter initiated before the present writ proceeding was commenced.

[4]Mandate is a proper remedy for compelling a trial court to vacate its order made without jurisdiction. (*Siegal* v. *Superior Court* (1968) 68 Cal.2d 97 [65 Cal.Rptr. 311, 436 P.2d 311].) The absence of another adequate remedy was determined by the Court of Appeal when it granted the alternative writ. (*Nathanson* v. *Superior Court* (1974) 12 Cal.3d 355, 361 [115 Cal.Rptr. 783, 525 P.2d 687].)

presiding as temporary judges under the distinct provisions of section 21 of article VI. (See *Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351, 365, fn. 11 [110 Cal.Rptr. 353, 515 P.2d 297]; *People* v. *Oaxaca* (1974) 39 Cal.App.3d 153, 165 [114 Cal.Rptr. 178].) Section 21 states: *"On stipulation of the parties litigant* the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." (Italics added.) The statutory power of a commissioner "[t]o act as judge pro tempore when otherwise qualified so to act and when appointed for that purpose" (Code Civ. Proc., § 259a, subd. 4) is subject to this constitutional provision, and accordingly a commissioner cannot act as a temporary judge except "on stipulation of the parties litigant." (*People* v. *Tijerina* (1969) 1 Cal.3d 41, 48-49 [81 Cal.Rptr. 264, 459 P.2d 680].)

■ Petitioner concedes that the commissioner who made the temporary support orders was a duly qualified appointee of respondent court. Furthermore, petitioner does not question that the stipulations under which the commissioner purported to act were sufficient in *form* for that purpose but contends that they were ineffective because they were signed only by petitioner's adversary and her counsel and not by petitioner or his counsel. We are thus faced with the question whether petitioner was a "party litigant" within the meaning of article VI, section 21, at the time of the hearing of December 4, 1972.

Section 21 was adopted in 1966 in place of former article VI, section 5, paragraph 3, which similarly authorized appointment of temporary judges (then referred to as judges pro tempore) to try causes in the superior and municipal courts on "stipulation of the parties litigant." Referring to the former provision, this court said in *Estate of Kent* (1936) 6 Cal.2d 154 [57 P.2d 901]: " 'Under the customary rules of constitutional interpretation each word should be given some value. In the constitutional provision the word "litigant" qualifies the word "parties" and the two words must be given some value beyond the one word "parties." Obviously *the phrase "parties litigant" means the parties who are taking part in the litigation,—those who have appeared therein.* There are many causes at law and in equity where the rights of parties are determined although the parties themselves do not conduct the litigation. These actions, where contested, proceed under the direction of parties to the controversy who have appeared—who are "parties litigant." At the same time the proceeding determines the rights of other parties in interest but not litigant. Among such cases are receiverships, representative suits, actions by and against trustees, and, assuming that nonappearing heirs and devisees and

creditors are parties, then the several proceedings in probate.'" (*Id.,* at p. 162, italics added.)

The *Kent* decision upheld the authority of a commissioner to hear a probate matter as a judge pro tempore on the stipulation of all the parties *who had appeared in the proceeding* but without the stipulation of the heirs, devisees, and creditors of the estate who had not appeared. Although the facts of *Kent* suggest considerations peculiar to in rem proceedings (see *Lilienkamp* v. *Superior Court* (1939) 14 Cal.2d 293 [93 P.2d 1008]), its reasoning has been applied to deny "litigant" status under the former constitutional provision to a person named as a party in the pleadings and served with process. In *Barfield* v. *Superior Court* (1963) 216 Cal.App.2d 476 [31 Cal.Rptr. 30], a commissioner sitting as judge pro tempore rendered an interlocutory judgment of divorce against a defendant whose default had been duly entered. The appellate court held that the defendant was not a "party litigant" and therefore a stipulation signed by the plaintiff alone was constitutionally sufficient to empower the commissioner to act.[5]

The *Kent* and *Barfield* decisions construing the phrase "parties litigant" in the former constitutional provision assume added importance in the light of circumstances surrounding the adoption of the provision now before us, article VI, section 21. The new section was originally drafted by the California Constitution Revision Commission as part of a general revision of article VI. The initial draft would have required only a stipulation of the "parties" for the appointment of a temporary judge, omitting the word "litigant." (Proposed Revision (1966) Cal. Const. Revision Com., p. 98.) "The Legislature restored the terminology 'parties litigant' as it appeared in the former constitutional provision instead of the unmodified term 'parties' in referring to the persons from whom a stipulation is required. This preserves intact the preexisting law." (Judicial Council of Cal., Annual Rep.

---

[5]The court rejected the argument that the constitutionally required "stipulation" must be an agreement between at least two parties: "It must be remembered that the 'stipulation' required is that 'of' and not 'between' the litigants. The decision to refer a pending cause to a judge pro tempore, and the selection of the individual member of the bar who is to so act, are, in the end, with the court, which must approve and order the designation, not with the litigant. If 'agreement' is here required, it is the agreement between court and litigant which controls." (*Barfield* v. *Superior Court, supra,* 216 Cal.App.2d at p. 479.)

In *Bill Benson Motors, Inc.* v. *Macmorris Sales Corp.* (1965) 238 Cal.App.2d Supp. 937 [48 Cal.Rptr. 123], a commissioner sitting in a municipal court as judge pro tempore under a stipulation signed by the plaintiff but not by the appealing defendants rendered a judgment against the defendants after a trial conducted in their absence under section 594 of the Code of Civil Procedure. On appeal it was held that the defendants by willfully remaining away from the trial after denial of their motion for continuance had removed themselves from the class of parties litigant whose stipulation was required for the appointment of the judge pro tempore.

(1967) p. 90.) ▉ The adoption of constitutional language similar to that in a former constitutional provision is presumed to incorporate authoritative judicial construction of the former language. (*In re Lavine* (1935) 2 Cal.2d 324, 331 [41 P.2d 161, 42 P.2d 311]; *People* v. *District Court of Appeal* (1924) 193 Cal. 19 [222 P. 353]; *People* v. *Pacific Gas & Elec. Co.* (1914) 168 Cal. 496, 499 [143 P. 727].) This presumption carries even greater weight when as here the Legislature has amended an initial draft for the apparent express purpose of preserving the pre-existing language.

▉ Petitioner claims he was a party litigant at the time of the hearing of December 4, 1972, because his time to file a responsive pleading in the dissolution proceeding and in the action for adult child support had not yet expired. He was served on November 24, 1972, with an initial pleading and summons in each of the two proceedings. Each summons clearly notified him that he had 30 days after service in which to file a responsive pleading (Code Civ. Proc., § 412.20, subd. (a)(3)), and therefore his time to plead in each proceeding could not expire before December 26, 1972 (Code Civ. Proc., §§ 12a, 418.10, subd. (d)). However, his good standing with respect to the pleadings did not cure his default in failing to make a timely response to the order to show cause and notice of motion which were served on him at the same time as the summonses and initial pleadings. Petitioner does not question the efficacy of the order to show cause and notice of motion to subject him to the court's jurisdiction at the time of the hearing.[6]

Although petitioner's failure to appear at the hearing did not expose him to entry of default judgments pursuant to the pleadings, it did subject him to the rendition of orders having many of the attributes of judgments. ▉ An order for temporary support is a final judgment for purposes of appeal. (*Greene* v. *Superior Court* (1961) 55 Cal.2d 403, 405 [10 Cal. Rptr. 817, 359 P.2d 249]; *Lincoln* v. *Superior Court* (1943) 22 Cal.2d 304, 310 [139 P.2d 13].) Even if the principal action or proceeding is

---

[6]The order to show cause, issued in the dissolution proceeding over the signature of a commissioner of respondent court (Code Civ. Proc., § 259a, subd. 1; *Lewis* v. *Neblett* (1961) 188 Cal.App.2d 290, 296-297 [10 Cal.Rptr. 441]) served not only as a notice of hearing but also as a citation or summons, giving the court personal jurisdiction when served on petitioner. (*Difani* v. *Riverside County Oil Co.* (1927) 201 Cal. 210, 213-214 [256 P. 210]; *Sturm* v. *Sturm* (1955) 138 Cal.App.2d 25, 28 [291 P.2d 527]; 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 30, p. 2698.) The petition for the instant writ refers to this order and to the notice of motion served in the adult daughter's support action as "both said orders to show cause" and petitioner does not question his subjection to the jurisdiction of the court at the hearing of which both documents gave notice. Hence we need not consider any distinction between the legal effects of the two documents in this case.

subsequently terminated by dismissal or abatement, the temporary support order remains enforceable as to amounts accruing prior to such termination. (*Moore* v. *Superior Court* (1970) 8 Cal.App.3d 804, 809 [87 Cal. Rptr. 620]; *Wiley* v. *Wiley* (1960) 183 Cal.App.2d 588 [7 Cal.Rptr. 73]; *Douglas* v. *Superior Court* (1956) 143 Cal.App.2d 17, 19 [299 P.2d 285].)

An application for temporary support "is heard and determined upon a record of its own" (*Robbins* v. *Mulcrevy* (1929) 101 Cal.App. 300, 301 [281 P. 668]), and "while not a separate action, is a proceeding for a separate judgment independent of the final judgment in the action" (*Douglas* v. *Superior Court, supra,* 143 Cal.App.2d at p. 19). These principles apply not only in marital proceedings but also to temporary support orders in actions to enforce support obligations between parents and adult children. (See *Paxton* v. *Paxton* (1907) 150 Cal. 667 [89 P. 1083]; *Kruly* v. *Superior Court* (1963) 216 Cal.App.2d 589 [31 Cal.Rptr. 122].) The provision of the order in the dissolution proceeding requiring petitioner to pay his wife's attorney's fees was "in effect a final judgment against a party in a collateral proceeding growing out of the action." (*Fish* v. *Fish* (1932) 216 Cal. 14, 16 [13 P.2d 375]; see *Sjoberg* v. *Hastorf* (1948) 33 Cal.2d 116, 119 [199 P.2d 668].) The provisions restraining petitioner's entry into the family residence and restricting his disposition of community property were similar to final judgments in that they were appealable. (Code Civ. Proc., § 904.1, subd. (f).) Thus, petitioner's failure to appear after notice at the hearing on the application for temporary support put him in default for purposes of entering orders against him which have most of the attributes of final judgments.

It is suggested, however, that a party who has defaulted in such an ancillary proceeding but not on the pleadings themselves should be deemed a party litigant because the temporary judge who presides without his consent at the ancillary proceeding must be "sworn and empowered to act until final determination of the cause." (Const., art. VI, § 21.) According to this argument, such temporary judge would have power to preside over all subsequent phases of the principal action or proceeding, including the trial itself, regardless of the participation therein of parties who had defaulted at the earlier ancillary proceeding at which the temporary judge was appointed.

This argument erroneously attributes an overbroad meaning to the word "cause." A cause is the proceeding before the court. Thus, when this court exercises its power to "transfer to itself a cause in a court of appeal" (Const., art. VI, § 12), it grants a hearing only on the matter which, if decided by the intermediate appellate court, would operate as a final dis-

position thereof in that court (see *In re Wells* (1917) 174 Cal. 467, 473 [163 P. 657]), but the order of transfer does not apply to appellate court proceedings subsequently commenced in the intermediate court which may arise out of the same underlying action or special proceeding.

Similarly, temporary judges may be appointed to hear causes connected with but distinct from the underlying principal case. (*Estate of Soforenko* (1968) 260 Cal.App.2d 765 [67 Cal.Rptr. 563] (executor's first account); *Amos* v. *Superior Court* (1960) 182 Cal.App.2d 343 [6 Cal.Rptr. 252] (preliminary hearing in municipal court on criminal charge triable in superior court); *Quezada* v. *Superior Court* (1959) 171 Cal.App.2d 528 [340 P.2d 1018] (civil contempt to enforce temporary support order).) The appointment of a temporary judge to hear a particular "cause" carries with it the power to act until the final determination of *that proceeding.* (*Anderson* v. *Bledsoe* (1934) 139 Cal.App. 650 [34 P.2d 760] (temporary judge who tried case was thereby empowered to rule on motion to vacate his order granting new trial).) Such appointment does not, however, authorize the temporary judge to act in distinct proceedings, albeit ancillary to the same principal action, without being appointed and qualified for that purpose. Thus, in the present case the commissioner's power as temporary judge to render the temporary support orders against petitioner would not include a power to hold petitioner in contempt for noncompliance with those orders. (*In re Wales* (1957) 153 Cal.App.2d 117 [315 P.2d 433].)

■ We conclude that for the purpose of defining "party litigant" (Const., art. VI, § 21), petitioner's default with respect to the applications for temporary support is indistinguishable from that of a defendant whose default is entered in a civil action following his failure to plead within the required time. Accordingly, petitioner was not a party litigant, and the stipulations executed by the applicants for temporary support were sufficient to empower the commissioner to act as a temporary judge. (*Barfield* v. *Superior Court, supra,* 216 Cal.App.2d 476.)[7]

Because we conclude that the commissioner had power to render the support orders in question as a temporary judge, we need not consider the alternative contention by respondent court that he had such power as

---

[7]*Rooney* v. *Vermont Investment Corp., supra,* 10 Cal.3d 351, 359-360, is distinguishable. There, a judgment was signed by a commissioner, purportedly pursuant to a settlement stipulation, on the ex parte application of the plaintiffs in the absence of the defendants and with no notice to the defendants of any date of hearing. The stipulation contained no authorization for the appointment of a temporary judge, and the absence of defendants who had appeared in the action from a proceeding therein of which they had no notice could not impair their standing as parties litigant.

a commissioner performing subordinate judicial duties under article VI, section 22, of the Constitution.

### *Jurisdiction Over Support Claim Asserted Through Guardian Ad Litem*

In the action for support by Jane Sarracino through her guardian ad litem, Dorothy Sarracino, there was filed and served on petitioner, along with the summons and copies of the complaint and notice of motion for temporary order of support, a copy of a "Petition and Consent for Appointment of Guardian Ad Litem, and Order." The petition, signed by Dorothy Sarracino, alleges inter alia that she is the mother of Jane, who has a cause of action for support against Ernest Sarracino, has no general guardian, and is not competent to manage her own financial affairs or protect her property, and prays for the appointment of Dorothy as guardian ad litem to prosecute the action on behalf of the plaintiff, Jane. Attached to the petition is a written consent to the appointment signed by Jane and an order of the court making the appointment as prayed for. It is alleged in the complaint and stated in a declaration attached to the notice of motion that Jane Sarracino is 24 years old.

Petitioner herein, Ernest Sarracino, contends that defects in the appointment of the guardian ad litem deprived the court of jurisdiction to order payments for his daughter Jane's support at the uncontested hearing of December 4, 1972. His initial argument is that a guardian ad litem cannot be appointed on the ground of a party's incompetency unless that party has been adjudged insane or incompetent in an independent proceeding.

Petitioner's argument is without merit. There is no such provision in sections 372 and 373 of the Code of Civil Procedure, which constitute the statutory authorization for appointing guardians ad litem. Section 372 states: "When . . . an insane or incompetent person is a party, he must appear either by a guardian of the estate or by a guardian ad litem appointed by the court in which the action is pending, or by a judge thereof, in each case. A guardian ad litem may be appointed in any case, when it is deemed by the court in which the action or proceeding is prosecuted, or by a judge thereof, expedient to represent the . . . insane, or incompetent person in the action or proceeding, notwithstanding he may have a guardian of the estate and may have appeared by him. . . .

"[R]eference to 'incompetent person' shall be deemed to include 'a person for whom a conservator may be appointed.'"

Section 373 states: "When a guardian ad litem is appointed, he must be

appointed as follows: . . . "3. When an insane or incompetent person is a party to an action or proceeding, upon the application of a relative or friend of such insane or incompetent person, or of any party to the action or proceeding, or by the court on its own motion."

Although these provisions permit the appointment of a guardian ad litem for a party who already has a general guardian of his estate, they do not require any prior independent adjudication of incompetency. (See *Dunphy* v. *Dunphy* (1911) 161 Cal. 380, 382, 389 [119 P. 512].) Incompetency may exist independently of any judicial determination thereof. (*Olivera* v. *Grace* (1942) 19 Cal.2d 570, 577 [122 P.2d 564, 140 A.L.R. 1328].)

Petitioner argues that incompetency within the meaning of these code sections is not sufficiently alleged in the petition for appointment of the guardian ad litem or the complaint for support. The petition alleges that Jane Sarracino "is not . . . competent to manage her financial affairs or protect her property," and the complaint further alleges she "is not competent or able to manage her own affairs." These allegations sufficiently describe "a person for whom a conservator may be appointed" who is deemed "incompetent" under section 372. (See Prob. Code, § 1751.)[8] Moreover, the guardian ad litem's declaration attached to the application for temporary support sets out facts supporting these allegations.

Petitioner argues that for the court to make an implied finding of Jane Sarracino's incompetency and thereupon appoint a guardian ad litem for her simply on the ex parte application of her mother violated her right to due process of law. Petitioner is not appearing on behalf of Jane, however, but is before us only for the purpose of testing the jurisdiction of the respondent court to render a temporary support order against him. For this purpose, his interest is sufficiently protected if Jane was a party within the jurisdiction of the court and bound by the order purportedly made in her favor.

The proceedings for appointment of the guardian ad litem were on their face regular and sufficient to empower the appointee to act in a representative capacity. The appointment may properly be made on an ex parte application. (*Granger* v. *Sherriff* (1901) 133 Cal. 416, 418 [65 P. 873];

---

[8]Probate Code section 1751 provides: "Upon petition as provided in this chapter, the superior court, if satisfied by sufficient evidence of the need therefor, shall appoint a conservator of the person and property or person or property of any adult person who by reason of advanced age, illness, injury, mental weakness, intemperance, addiction to drugs or other disability, or other cause is unable properly to care for himself or for his property, or who for said causes or for any other cause is likely to be deceived or imposed upon by artful or designing persons . . . ."

3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 58, p. 1738.) If any proof of notice to the alleged incompetent was required, which we do not decide, it was afforded by her signature on the consent to the appointment.

■ A guardian ad litem who appears for an incompetent person in an action or proceeding does not thereby become a party to that action or proceeding any more than the incompetent person's attorney of record is a party. (*In re Marriage of Higgason* (1973) 10 Cal.3d 476, 484 [110 Cal.Rptr. 897, 516 P.2d 289].)[9] The guardian ad litem, like the attorney, is both the incompetent's representative of record and a representative of the court. (*Cole* v. *Superior Court* (1883) 63 Cal. 86, 89; *Estate of Cochems* (1952) 110 Cal.App.2d 27, 29-30 [242 P.2d 56]; *Serway* v. *Galentine* (1946) 75 Cal.App.2d 86, 89 [170 P.2d 32].) An attorney's authority to represent his purported client is presumed in the absence of a strong factual showing to the contrary. (*Sullivan* v. *Dunne* (1926) 198 Cal. 183, 190 [244 P. 343]; *Pacific Paving Co.* v. *Vizelich* (1903) 141 Cal. 4, 8 [74 P. 352].) ■ Petitioner having made no factual showing of any irregularity in the guardian ad litem's appointment or of any deficiency in her authority to represent Jane Sarracino, her authority is presumed.[10]

The peremptory writ is denied and the alternative writ is discharged.

McComb, J., Tobriner, J., and Burke, J.,* concurred.

**MOSK, J.**—I dissent.

The majority advance two incomprehensible and contradictory definitions of "stipulation." It is, they state, a document "signed by plaintiff alone"

---

[9]Thus *McClure* v. *Donovan* (1949) 33 Cal.2d 717, 723-729 [205 P.2d 17], which petitioner quotes extensively in his brief, is not in point because in it an action to annul a marriage on grounds of the husband's being of "unsound mind" when the marriage was contracted was brought by his sister *as plaintiff* under former Civil Code sections 82 and 83, permitting such an action to be brought by the incompetent spouse's "relative or guardian." It was held that the court could not enter a judgment of annulment without making the husband himself a party.

[10]Petitioner's reply brief tardily raises two other objections to the guardian ad litem's authority, neither of which has merit.

He points out that the complaint for support is verified by Dorothy Sarracino as "plaintiff" instead of as guardian ad litem. This oversight is not fatal since the body of the complaint properly and repeatedly identifies Jane Sarracino as the plaintiff.

Petitioner also argues that the guardian ad litem and her counsel have a conflict of interest in that she herself may be liable to furnish support as Jane Sarracino's mother, but adds that he "recognizes that this is not a matter involving jurisdiction which is the foundation of a petition for a Writ of Prohibition/Mandate." Petitioner thus correctly answers his own argument.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

(*ante*, p. 7), and thereafter they cite with approval (at fn. 5) *Barfield* v. *Superior Court* (1963) 216 Cal.App.2d 476, 479 [31 Cal.Rptr. 30], which describes the stipulation there as "the agreement between court and litigant."

I have always deemed the term to be universally understood as "An agreement *between counsel* respecting business before the court." (Italics added.) (Black's Law Dict. (4th ed.) p. 1586.) The term "stipulation" is "given to any agreement made by the *attorneys engaged on opposite sides of a cause,* (especially if in writing,) regulating any matter incidental to the proceedings or trial" (*ibid.;* italics added). The origin of the term was the Latin, "stipulatio," which in Roman law "was the most solemn and formal of all the contracts in that system of jurisprudence. It was entered into by question and corresponding answer thereto, by the parties, *both being present at the same time*" (*ibid.;* italics added).

Cases are legion throughout California reports requiring both parties to a lawsuit or their counsel to agree, or there is no stipulation. As Justice Traynor wrote in *Palmer* v. *City of Long Beach* (1948) 33 Cal.2d 134, 142-143 [199 P.2d 952]: "A stipulation is an agreement between counsel respecting business before the court (Bouv. Law Dict., Baldwin's Century Edition), and like any other agreement or contract, it is essential that the parties or their counsel agree to its terms. . . . [¶] . . . Unless it is clear from the record that both parties assented, there is no stipulation." In *Palmer* this court held that "Entry of the purported stipulation in the minutes upon request of plaintiff's counsel did not bind defendant since 'it was not in the power of the Court, nor any one else, without [defendant's] consent, or that of [its] attorney, to make it binding.' " (*Id.,* at p. 143; see also *Southern Pacific Co.* v. *Schwartz* (1964) 226 Cal.App.2d 481, 485-486 [38 Cal.Rptr. 243]; *Barendregt* v. *Downing* (1959) 175 Cal.App.2d 733 [346 P.2d 870]; *Baker* v. *Solari* (1958) 166 Cal.App.2d 472, 475 [333 P.2d 791].)

In short, I can find no reputable authority defining a stipulation as a legally controlling instrument unilaterally executed by one party to a lawsuit, or by the attorney for one party. The majority's newly contrived version of the term compels a revision of law dictionaries, digests, and every existing compilation of words, phrases and maxims.

But, the majority hold, stipulations are required only of parties litigant, and this petitioner was not a party litigant because he failed to appear at the hearing on the order to show cause. This deduction trifles with reality. The petitioner was named in the complaint as a party litigant, he was served

with summons as a party litigant, and he was not in default as a party litigant. He merely failed to contest a pendente lite order. There is a vast consequential difference, as pointed out in *Mosler* v. *Parrington* (1972) 25 Cal.App.3d 354, 357 [101 Cal.Rptr. 829], between a defaulted case and an uncontested proceeding within a case which has not been defaulted.

Under the rule embraced by the majority a party to a lawsuit not in default may have his status as a party litigant ebb and flow throughout the lawsuit, dependent entirely upon his physical presence in a courtroom. Indeed his status may change if he is absent when a proceeding begins, but appears late in the courtroom after the hearing is under way. To illustrate the vagaries of the majority theory: one is a party litigant when served with summons, he is not a party litigant when he fails to appear at the order to show cause hearing, he becomes a party litigant again when he seeks a modification of the order to show cause, he loses his role as a party litigant when he fails to appear at a hearing on an order to show cause in re contempt, and he becomes one once again when he appeals from the order. Under such an oscillating concept, the status of the parties from moment to moment becomes a definitional quagmire.

I would reach the same conclusion as that of Presiding Justice Files and Justice Dunn for the Court of Appeal. Therefore, except for their final paragraph of disposition, I adopt their opinion as my dissent, as follows:

This proceeding involves the power of a superior court commissioner to hear and decide an uncontested application for temporary support in a family law case.

The petitioner in this court, Ernest James Sarracino, is the defending party in two actions brought in the Los Angeles Superior Court. Case NWD 41155 is a proceeding brought by Dorothy Sarracino for dissolution of marriage. Case NWD 41151 is an action for support brought by his adult daughter, Jane Sarracino, by her guardian ad litem, Dorothy Sarracino. On November 24, 1972, defendant was served with summons and complaint in each case and with an order to show cause in case 41155 and a notice of motion in case 41151, both relating to a hearing to be held on December 4, 1972. On that date defendant failed to appear in person or by counsel. He had not yet filed any pleading or other notice of appearance in either case, and his time to plead had not expired. Mrs. Sarracino and her attorney each signed forms entitled "STIPULATION FOR THE APPOINTMENT OF COURT COMMISSIONER AS TEMPORARY JUDGE" consenting that Commissioner Calof, or any other commissioner of the superior court, might hear the pending matters as a temporary judge. The "stipulations"

bear no signature by or on behalf of Mr. Sarracino. The commissioner conducted the hearing and made orders requiring Mr. Sarracino to pay temporary support to his wife and daughter. The orders in the dissolution case also restrained Mr. Sarracino from entering the family residence without the consent of his wife or from transferring the community property except in the ordinary course of business or for the necessities of life.

Subsequently Mr. Sarracino appeared in the two superior court actions and moved to set aside the support orders upon the ground that the commissioner lacked jurisdiction to hear and decide these matters. Those motions were denied.

On September 17, 1973, Mr. Sarracino filed his petition in this court seeking a writ to compel the superior court to set aside the support orders because made by a commissioner, and to set aside the order appointing the guardian ad litem upon the ground there had been an inadequate showing of Jane's incompetency.

We issued an alternative writ with respect to the first issue only. The question raised with respect to the guardian ad litem is not one which justifies review by the use of a prerogative writ.

The state Constitution contains two bases of jurisdiction for judicial action by a court commissioner who is also a member of the bar. Article VI, section 21, provides: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause."

Article VI, section 22, provides: "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties."

The record is clear that Commissioner Calof purported to act solely as a temporary judge under section 21, and not as a court commissioner performing subordinate judicial duties under section 22. The petition filed in this court alleges: "Said Manley D. Calof was at no time herein mentioned a judge of respondent court, but was, during all the times herein mentioned, a duly qualified and appointed commissioner of respondent, and further was, during all the times mentioned herein, admittedly acting by and through the authority only as set forth and provided in said 'STIPULATION FOR APPOINTMENT OF COURT COMMISSIONER AS TEMPORARY JUDGE.'"

The answer of real parties in interest admits that allegation. The respondent court has filed no responsive pleading denying the allegation.

*People* v. *Tijerina* (1969) 1 Cal.3d 41, 48 [81 Cal.Rptr. 264, 459 P.2d 680], makes it clear that a court commissioner may not act as a temporary judge under section 21 except upon a stipulation of the parties.

Nevertheless, counsel for Mrs. Sarracino contend that Mr. Sarracino was not one of the "parties litigant" and that his agreement was not required because (a) he had not filed a pleading or other appearance in the proceedings and (b) he did not contest or oppose the granting of the relief sought at the hearing on December 4, 1972. We think neither circumstance deprived him of his status as one of the "parties litigant" within the meaning of section 21 of article VI of the California Constitution.

Mr. Sarracino became a party to both the dissolution proceeding and the support action by being named as a party in the original pleadings. (See *McDonald* v. *Severy* (1936) 6 Cal.2d 629 [59 P.2d 98].) The jurisdiction of the superior court over Mr. Sarracino in these two proceedings commenced with the service of summons on November 24, 1972. (Code Civ. Proc., § 410.50.) He was entitled to appear and assert such defenses as might be appropriate, and he was subject to such orders as the court might make within the scope of its jurisdiction in each proceeding. His failure to make opposition to the matters set for hearing on December 4 implied no more than his willingness that the court make such lawful orders as it found appropriate. His absence cannot reasonably be interpreted as stipulating that any member of the bar agreeable to the other party might hear and decide these matters.

The opinion in *Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351 [110 Cal.Rptr. 353, 515 P.2d 297], handed down while the present case was pending here, contains a pertinent discussion of the authority of a court commissioner under section 21 and under section 22. In *Rooney*, the defendant had entered into a written stipulation that a judgment might be entered against it under certain circumstances. The appeal was from a judgment for plaintiff which a court commissioner, purporting to act under that stipulation, had signed after an ex parte request from plaintiff. For the purpose of discussing the jurisdiction of the commissioner, the Supreme Court assumed the existence of a stipulation which would support a judgment on an ex parte application to a regular judge. (10 Cal.3d at p. 366.) The court concluded that, under that assumption, the commissioner might have acted under section 22 if the court had ordered him to do so under Code of Civil Procedure section 259a, subdivision 6.[1] But in passing upon

---

[1]Code of Civil Procedure section 259a: "Subject to the supervision of the court, every court commissioner of a county or city and county having a population of nine

the merits of the appeal, the Supreme Court reversed the commissioner's order because, among other reasons, the stipulation of the parties, properly construed, did not consent that judgment might be entered without notice to the defendant that evidence was to be taken to establish the amount of it.

Of particular significance here is another holding which the *Rooney* opinion summarized in the following language: "The commissioner did not have the power to act as a temporary judge because no stipulation that he could so act had been entered into by the parties. (Cal. Const., art. VI, § 21 . . . .)" (10 Cal.3d at p. 357.)

The implication is that, even on the assumption that the defendant had consented to the entry of a judgment against him without notice, such a consent did not deprive him of his status as one of the "parties litigant" within the meaning of section 21.

Two older cases require brief note.

*Estate of Kent* (1936) 6 Cal.2d 154 [57 P.2d 901], holds that in probate proceedings the "parties litigant" who may stipulate to a temporary judge are those parties who have appeared. In probate the jurisdiction of the court is *in rem,* and the "parties" are not identified in the pleadings as in civil actions. Anyone who claims to have an interest in the estate is entitled to appear and be heard. Such interested persons may include heirs and creditors whose names do not appear in the court's records. Other interested persons may be creditors of heirs or persons whose tax liability may be affected by the probate proceedings, whose interest is unknown to the court until the party appears. (See *Estate of Kovacs* (1964) 227 Cal. App.2d 308 [38 Cal.Rptr. 612].) Hence, there is the rule in probate, applied in the *Kent* case, that a person is not deemed a party to a probate proceeding until he actually appears, though he may be bound by determinations made before he appears. (See *Lilienkamp* v. *Superior Court* (1939) 14 Cal.2d 293 [93 P.2d 1008].) The definition of "parties litigant," as used in the probate cases, has no application to personal actions and proceedings where the parties are named in the pleadings, and the relief granted is between the parties so named and those in privity with them.

---

hundred thousand inhabitants or more shall, in addition to the powers and duties contained in Section 259 of this code, have power:

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"6. When ordered by the court appointing him so to do, to hear, report on and determine all uncontested actions and proceedings other than actions for divorce, maintenance or annulment of marriage;

"    .    .    .    .    .    .    .    .    .    .    .    .    .    ."

*Barfield* v. *Superior Court* (1963) 216 Cal.App.2d 476 [31 Cal.Rptr. 30], involved a default divorce heard by a commissioner, sitting as a temporary judge. There the court held that the defendant, whose default had been entered, was not one of the "parties litigant" whose consent was required for the appointment of a temporary judge. The status of a party changes drastically after the entry of his default. He is deemed to have admitted the allegations of the adverse pleading (see *Brown* v. *Brown* (1915) 170 Cal. 1, 5 [147 P. 1168]) and, thus for most purposes, is no longer a litigant. That analysis is not applicable to a party who simply fails to make an appearance for a hearing on a motion.

Having concluded that the commissioner had no jurisdiction to act as a temporary judge in the absence of a stipulation joined in by Mr. Sarracino, we now consider whether the record would permit us to uphold the commissioner's jurisdiction under section 22. The *Rooney* decision, *supra,* 10 Cal.3d 351, 360, 367, indicates that the hearing of an uncontested motion may be within the jurisdiction of a commissioner, as defined in Code of Civil Procedure section 259a, subdivision 6 (fn. 1, *ante*) without a stipulation of the parties, "[w]hen ordered by the court appointing him so to do." One difficulty in the present case is that there is no order of the superior court appointing Commissioner Calof to hear the Sarracino cases. The record shows that Manley D. Calof has been duly appointed a commissioner of the superior court of Los Angeles County and as a "judge pro tem"; and that the presiding judge has assigned him to sit in Department North West "J" which is the department in which the December 4, 1972, proceedings were heard.

With respect to the form of the order required by Code of Civil Procedure section 259a the *Rooney* opinion says: "The order may take any form that establishes the court's official determination that the proceeding is one that the commissioner should hear and determine." (10 Cal.3d at p. 368.)

No such order appears. The explanation, no doubt, is that the superior court assumed that Commissioner Calof would sit as a temporary judge, relying upon a stipulation of the parties to establish jurisdiction under section 21. There being no such stipulation, the orders cannot stand.

I would issue a peremptory writ of mandate directing the superior court to set aside the orders of the commissioner.

Sullivan, J., and Clark, J., concurred.

Petitioner's application for a rehearing was denied January 8, 1975. Mosk, J., Sullivan, J., and Clark, J., were of the opinion that the application should be granted.