[No. F034964. Fifth Dist. Mar. 14, 2001.]

In re SARA D., a Person Coming Under the Juvenile Court Law.
KERN COUNTY DEPARTMENT OF HUMAN SERVICES, Plaintiff and
Respondent, v.
TAYLOR D., Defendant and Appellant.

## COUNSEL

Colin J. Heran, under appointment by the Court of Appeal, for Defendant and Appellant.

B. C. Barmann, Sr., County Counsel, and Mark L. Nations, Chief Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**THAXTER, Acting P. J.**—In this case of first impression, we conclude that before appointment of a guardian ad litem for a parent in a Welfare and Institutions Code section 300[1] proceeding, the parent's right to due process requires an informal hearing and an opportunity for the parent to be heard. The failure to provide the parent with an opportunity to be heard in this case requires reversal of the jurisdictional and dispositional orders.

### PROCEDURAL BACKGROUND AND FACTS

A petition was filed on September 17, 1999, alleging that Sara D., born in September 1993, came within the jurisdiction of the juvenile court pursuant to section 300, subdivisions (b) and (c). Count I alleged Sara's mother, appellant Taylor D., was unable to control Sara's extreme behavior, placing Sara at risk of serious harm or illness. It also alleged Taylor's home was considered a health and safety hazard as a result of a visit on September 16, 1999, and Taylor allegedly suffered from a bipolar disorder and personality disorder requiring various prescription medications rendering her unable to care for Sara. Sara's father, Louis D., allegedly failed to maintain a relationship with Sara and failed to protect the child from the neglect of Taylor.

Count II alleged Sara has suffered or is likely to suffer serious emotional damage as a result of Taylor's conduct as evidenced by Sara's out-of-control behavior and arguments between Sara and Taylor.

---

[1]Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

A contested jurisdictional hearing was scheduled for November 1, 1999. On that date, the court relieved Taylor's appointed counsel and continued the hearing to November 19. On November 19, Taylor appeared with new counsel and testimony was received from Jenee Morris, the social worker assigned to the case by respondent Kern County Department of Human Services (Department). On December 13, the contested jurisdictional hearing resumed, and testimony was received from Taylor's therapist, Terrance Willey. The matter was then continued to December 16.

On December 16, the court appointed a guardian ad litem for Taylor. The events preceding the appointment form the basis for this appeal. Before presenting any testimony on the 16th, the attorneys requested a conference with the judge in chambers. Taylor did not attend the conference. Bruce N. Meier, Taylor's appointed attorney, told the court he was having difficulty communicating with Taylor. He felt she either did not appreciate or understand the concepts or issues which were being presented to the court, and she was confused about the proceedings. Mr. Meier requested that he be relieved as counsel for Taylor or that the court appoint a guardian ad litem for her.

The court stated Taylor's conduct appeared to be consistent with the features of the borderline personality defect diagnosed by her therapist. The court concluded a guardian ad litem should be appointed because (1) it had already relieved one attorney as counsel for Taylor, (2) they were in the middle of a contested hearing on jurisdiction, and (3) it would probably be more beneficial to Taylor to have a guardian ad litem appointed to assist Mr. Meier in preparation for the hearing and assist her in understanding the proceedings.

The court then reconvened in the courtroom and chose a continued date for the jurisdictional hearing. After the date of January 12, 2000, was selected, the following occurred:

"THE COURT: Counsel is there any one who is not going to be available on the 12th in the afternoon? I'll set it for the 12th in a.m., Januar[y] 12[,] a.m. Make request for guardian ad litem?

"MR. MEIER: Yes.

"THE COURT: The court will refer the matter . . . for the appointment of a guardian ad litem for the mother. Department is to provide[] extended overnight visitation with the father. . . ."

On January 12, Taylor, Mr. Meier and Taylor's guardian ad litem were present in court. Without presenting any further evidence, Mr. Meier informed the court that, after consulting with Taylor's guardian ad litem and therapist, he had reached an agreement with the other attorneys on a resolution of the jurisdiction issue. Under the agreement, the allegation that the

home was a health and safety hazard was stricken, the allegation that Taylor suffered from a bipolar disorder was amended to reflect that she suffered from a borderline personality disorder as testified by her therapist, and count II was dismissed. With these amendments, Mr. Meier and the other attorneys submitted the jurisdiction issue to the court based on the recommendations contained in the social study. The court found it had jurisdiction and set a dispositional hearing for January 27.

On January 27, the court granted the request of Taylor's guardian ad litem to be relieved and appointed a new guardian ad litem. The dispositional hearing was continued to January 31. Evidence, including the testimony of Taylor and Louis, was received on January 31 and February 1. At the conclusion of the testimony, the court awarded Louis legal and physical custody of Sara, with Taylor granted only supervised visitation rights. The court then dismissed the petition.

## DISCUSSION

Taylor raises two challenges to the appointment of the guardian ad litem. First, she challenges the sufficiency of the evidence to support the appointment. Second, she argues that the procedure used in this case violated her rights to due process.

A.   *The standard for determining incompetency on a motion for appointment of a guardian ad litem is set by either Probate Code section 1801 or Penal Code section 1367.*

Code of Civil Procedure section 372 provides that in any proceeding in which an incompetent person is a party, that person shall appear by a guardian ad litem appointed by the court in which the action is pending. As a preliminary matter, the parties disagree on what standard a trial court should use in determining whether an adult is incompetent and requires the appointment of a guardian ad litem. Appellant, citing *Sarracino v. Superior Court*,[2] argues that the correct standard is to be found in Probate Code section 1801,[3] while

---

[2]*Sarracino v. Superior Court* (1974) 13 Cal.3d 1, 12 [118 Cal.Rptr. 21, 529 P.2d 53].
[3]Probate Code section 1801 states, in relevant part:
    "(a) A conservator of the person may be appointed for a person who is unable to provide properly for his or her personal needs for physical health, food, clothing, or shelter, except as provided for the person as described in subdivision (b) or (c) of Section 1828.5.
    "(b) A conservator of the estate may be appointed for a person who is substantially unable to manage his or her own financial resources or resist fraud or undue influence, except as provided for that person as described in subdivision (b) or (c) of Section 1828.5. Substantial inability may not be proved solely by isolated incidents of negligence or improvidence.
    "(c) A conservator of the person and estate may be appointed for a person described in subdivisions (a) and (b)."

respondent, citing *In re Christina B.*,[4] argues the correct standard is found in Penal Code section 1367.[5]

In *Sarracino*, a mother was appointed the guardian ad litem for her 24-year-old daughter in support proceedings against the father. The petition to appoint a guardian ad litem alleged the daughter was not competent to manage her own financial affairs or to protect her own property. The application included a declaration which set out facts to support these grounds and a consent to the appointment signed by the daughter.[6]

On appeal, the father contended the appointment of the guardian ad litem was improper because the petition did not set forth facts to bring the daughter within the provisions of Code of Civil Procedure section 372. The Supreme Court held the allegations in the petition sufficiently described a person for whom a conservator could be appointed,[7] and that such allegations also described a person who was incompetent within the meaning of Code of Civil Procedure section 372.[8]

In *Christina B.*, the court held the proper standard to determine competency was whether the preponderance of the evidence established the mother lacked the capacity to understand the nature or consequences of the juvenile court proceeding, or that she was unable to assist her attorney in the preparation of her case.[9] The court rejected the test found in Probate Code section 1801 because it addressed an individual's ability to provide for material needs and did not speak to the court's primary concern, the ability of a person to take part meaningfully in the proceedings.

*In re R.S.*[10] impliedly adopted the test for incompetency found in Penal Code section 1367. A mother appealed to this court from a judgment which terminated her parental rights pursuant to former Civil Code section 232 (now Fam. Code, § 7800 et seq.). The mother had mild developmental disabilities as well as a dependent personality disorder. She argued that she received inadequate assistance of counsel because her attorney did not request the court to inquire into her competency. This court rejected the mother's argument, concluding that despite her conditions, the record established that "[N]either the trial court nor [the mother's] trial counsel ignored

---

[4]*In re Christina B.* (1993) 19 Cal.App.4th 1441, 1450 [23 Cal.Rptr.2d 918].

[5]Penal Code section 1367 states, in relevant part: "(a) A person cannot be tried or adjudged to punishment while that person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."

[6]*Sarracino v. Superior Court, supra,* 13 Cal.3d at page 11.

[7]Probate Code section 1801.

[8]*Sarracino v. Superior Court, supra,* 13 Cal.3d at page 12.

[9]*In re Christina B., supra,* 19 Cal.App.4th at page 1450.

[10]*In re R. S.* (1985) 167 Cal.App.3d 946 [213 Cal.Rptr. 690].

evidence that [the mother's] abilities were so limited that she was effectively rendered incompetent to understand the nature of the proceedings or to assist her counsel in representing her interest so as to require appointment of a guardian ad litem."[11]

In *In re Lisa M.*[12] the court found error in the trial court's failure to appoint a guardian ad litem for the mother after the trial court made express findings that the mother was not able to understand the dependency proceedings in which she was a participant.

■ We do not read the language of Code of Civil Procedure section 372 providing that an incompetent person includes " 'a person for whom a conservator may be appointed,' " as indicating that Probate Code section 1801 is the exclusive standard for determining when an adult is incompetent. *Christina B.* correctly observed that the primary concern in section 300 cases is whether the parent understands the proceedings and can assist the attorney in protecting the parent's interests in the companionship, custody, control and maintenance of the child.[13] We follow that standard here and conclude a guardian ad litem should be appointed if the requirements of either Penal Code section 1367 or Probate Code section 1801 are met. We also agree with *Christina B.* that the trial court must find by a preponderance of the evidence that the parent comes within the requirements of either section.[14]

B. *Due process is required before a guardian ad litem may be appointed.*

■ We know of no case law addressing the procedure for appointment of a guardian ad litem for an allegedly incompetent adult. This may be because most cases in which a guardian ad litem is appointed involve consensual appointments and/or situations in which a guardian ad litem is required as a matter of law; e.g., when a minor is a party to a lawsuit. In such situations, the attorney seeking to have the guardian ad litem appointed is taking the necessary steps to represent the interests of his or her client. Since no conflict of interest occurs, appointment of the guardian ad litem involves little exercise of discretion by the court.[15]

In dependency cases, courts and attorneys find themselves in a different position. The parent(s) whose custody of the child is being challenged often have various problems—physical, mental or emotional—which may make it difficult to understand the legal process to which they are exposed and may make it difficult for them to provide assistance to their appointed attorney. The attorney may find it difficult to communicate with the client. Accordingly, the attorney may determine that in order to protect the client's rights, a guardian ad litem should be appointed.

[11]*In re R. S., supra,* 167 Cal.App.3d at page 980.
[12]*In re Lisa M.* (1986) 177 Cal.App.3d 915, 919 [225 Cal.Rptr. 7].
[13]*In re Christina B., supra,* 19 Cal.App.4th at page 1450.
[14]*In re Christina B., supra,* 19 Cal.App.4th at page 1450.
[15]*J.W. v. Superior Court* (1993) 17 Cal.App.4th 958, 964, footnote 5 [22 Cal.Rptr.2d 527].

If the parent's attorney concludes that a guardian ad litem should be appointed, the attorney must either (a) approach the client and request consent to the appointment, or (b) not consult with the client and approach the court directly. If the attorney consults with the client and receives consent for the appointment of a guardian ad litem, the due process rights of the parent will be protected, since the parent participated in the decision to request the appointment.

If the parent does not consent, or the attorney forgoes consultation with the client and approaches the court directly, the court will find itself in a significantly different position. The court is being asked to dramatically change the parent's role in the proceeding by transferring the direction and control of the litigation from the parent to the guardian ad litem. In general civil litigation, a guardian ad litem has broad powers that include, with court approval, the ability to compromise a claim, to agree to an order or judgment, to satisfy a judgment, or to release or discharge a claim.[16] The guardian ad litem also has the power to control the lawsuit, including controlling procedural steps necessary to the conduct of the litigation, making stipulations or concessions with court approval, waiving the right to a jury trial, and controlling trial tactics.[17] While not all of these powers are applicable in a section 300 proceeding, the decisions made can affect the outcome of the dependency proceeding, with a corresponding effect on the parent. Therefore, the parent has a direct and substantial interest in whether a guardian ad litem is appointed.

The question then arises whether the interest we have identified is entitled to the protections of the due process clauses of the state and federal Constitutions.[18]

It is settled that the interest of a parent in the companionship, care, custody and management of his/her children is one of our most basic civil rights. Before the state can deprive a parent of this interest, it must provide the parent with a hearing and an opportunity to be heard.[19]

We have not found any case directly on point. Most guardian ad litem appointments are either required by law (a minor appearing before the

---

[16]Code of Civil Procedure section 372; *Scruton v. Korean Air Lines Co.* (1995) 39 Cal.App.4th 1596, 1603 [46 Cal.Rptr.2d 638].

[17]*De Los Santos v. Superior Court* (1980) 27 Cal.3d 677, 683-684 [166 Cal.Rptr. 172, 613 P.2d 233]; *Robinson v. Wilson* (1974) 44 Cal.App.3d 92, 104-105 [118 Cal.Rptr. 569].

[18]*Santosky v. Kramer* (1982) 455 U.S. 745, 753-754 [102 S.Ct. 1388, 1394-1395, 71 L.Ed.2d 599].

[19]*In re B. G.* (1974) 11 Cal.3d 679, 688-689 [114 Cal.Rptr. 444, 523 P.2d 244].

court), consensual,[20] or the incompetent person is provided an opportunity in the trial court to contest the appointment.[21] In *Sarracino*, the Supreme Court specifically reserved the question of whether notice to the alleged incompetent was required before a guardian ad litem could be appointed.[22] In *In re Christina B.*, the appellate court affirmed the appointment of a guardian ad litem, finding the evidence adduced at the hearing supported the trial court's order, but it did not address the procedure used in the trial court.

A parent's right to due process in custody proceedings has been established in a variety of contexts. The court in *In re Stacy T.*[23] found the mother's right to due process was violated when the court entered her "default" after she failed to appear at a settlement conference without first informing her of the consequences of failing to appear. In *In re Amy M.*,[24] the court found a due process violation when the lower court refused to allow the parents access to the child prior to the hearing and refused to allow the child to testify. *Long v. Long*[25] held due process required that each party was entitled to (1) a copy of the social study, (2) an opportunity to examine the officer who prepared the report, and (3) introduce rebuttal evidence. The appellate court in *In re Nemis M.*[26] held the trial court violated a father's right to due process when it denied his attorney the right to cross-examine witnesses after the father failed to appear at a hearing as ordered.[27]

While there are differences between custody and dependency proceedings, the fundamental interest of a parent in the companionship, care, custody, and management of the child is the same in each, as is the potential impact on that interest by the ultimate disposition of the proceeding. Transferring direction and control of the litigation through appointment of a guardian ad litem in a dependency proceeding may jeopardize the parent's interest as much, if not more, than any of the actions taken in the cited custody cases finding a due process violation. Therefore, we conclude Taylor was entitled to due process before the court appointed a guardian ad litem for her. In reaching this conclusion we are also influenced by the breadth of the due process protections statutorily provided the parent throughout section 300 cases.[28] If a court can transfer the direction and control of the litigation from the parent without due process, the remaining protections seem hollow.

Respondent argues Taylor's due process rights were protected because her appointed attorney participated in the decision to appoint the guardian ad

---

[20]*Sarracino v. Superior Court, supra*, 13 Cal.3d at page 13.
[21]*In re Christina B., supra*, 19 Cal.App.4th at page 1450.
[22]*Sarracino v. Superior Court, supra*, 13 Cal.3d at page 13.
[23]*In re Stacy T.* (1997) 52 Cal.App.4th 1415, 1426-1427 [61 Cal.Rptr.2d 319].
[24]*In re Amy M.* (1991) 232 Cal.App.3d 849, 867 [283 Cal.Rptr. 788].
[25]*Long v. Long* (1967) 251 Cal.App.2d 732, 736 [59 Cal.Rptr. 790].
[26]*In re Nemis M.* (1996) 50 Cal.App.4th 1344, 1352 [58 Cal.Rptr.2d 324].
[27]Accord, *In re Dolly D.* (1995) 41 Cal.App.4th 440, 445 [48 Cal.Rptr.2d 691].
[28]See *In re Marilyn H.* (1993) 5 Cal.4th 295, 306-308 [19 Cal.Rptr.2d 544, 851 P.2d 826].

litem. We disagree. While Mr. Meier undoubtedly acted to protect Taylor's due process rights in the context of retaining custody of the child, the conflict between Taylor and Mr. Meier on the issue of appointment of a guardian ad litem raises due process concerns. In a situation in which the parent does not consent to appointment of a guardian ad litem, or counsel approaches the court directly, an unusual tension is introduced into the attorney-client relationship because the attorney is acting either against the client's wishes or without the client's knowledge. Therefore, the court cannot completely rely on the attorney, acting as an agent for the client, to ensure the parent's rights are protected.

Respondent also argues that Taylor's due process rights were satisfied because it is permissible to appoint a guardian ad litem on ex parte application.[29] However, absent extraordinary circumstances, even ex parte applications require notice to all parties of the application the day before the ex parte hearing.[30]

Respondent cites *Briggs v. Briggs*[31] in arguing that the court was not required to give notice to Taylor. In *Briggs*, the court cited *Granger v. Sherriff*[32] as authority for the proposition that the validity of the appointment of a guardian ad litem for an insane person is not affected by the fact that notice of the application was not given to the incompetent. The *Briggs* court's statement is at best dicta since the court held that a guardian ad litem was never appointed because the order submitted by the plaintiff was not signed.[33]

Moreover, *Granger* does not stand for such a broad proposition. In that case the defendant Sherriff, was adjudged to be insane after filing an answer in the pending litigation. Thereafter, counsel for the plaintiff moved the court for appointment of a guardian ad litem without serving notice on Sherriff or her attorneys. Sherriff's attorneys appeared at the hearing and objected to the motion on the ground that no notice had been given. The trial court overruled the objection and appointed Sherriff's attorneys her guardian ad litem. The Supreme Court cited *Crawford v. Neal*,[34] which had approved the appointment of a guardian ad litem on an ex parte application, and observed there was not any statutory requirement of notice. The Supreme Court concluded the appointment was properly made on the application without notice.[35]

*Granger* at most stands for the proposition that a guardian ad litem can be appointed on an ex parte application. Sherriff had an opportunity to be

---

[29]*Sarracino v. Superior Court, supra,* 13 Cal.3d at page 12.
[30]California Rules of Court, rule 379.
[31]*Briggs v. Briggs* (1958) 160 Cal.App.2d 312 [325 P.2d 219].
[32]*Granger v. Sherriff* (1901) 133 Cal. 416, 418 [65 P. 873].
[33]*Briggs v. Briggs, supra,* 160 Cal.App.2d at page 319.
[34]*Crawford v. Neal* (1880) 56 Cal. 321.
[35]*Granger v. Sherriff, supra,* 133 Cal. at page 418.

heard because her attorneys appeared at the hearing and opposed the appointment. Our reading of *Granger* is consistent with *Sarracino* which cited *Granger* as authority for the proposition that a guardian ad litem can be appointed on ex parte application.[36] Immediately after citing *Granger*, the Supreme Court in *Sarracino* expressly noted that it was not deciding whether proof of notice to the incompetent was required, thus confirming the narrow scope of *Granger*.[37]

We also reject respondent's contention that if Taylor did not want a guardian ad litem appointed, she had an opportunity to object when the court granted Mr. Meier's motion. The record reveals the decision to appoint a guardian ad litem was made in chambers, outside Taylor's presence. The minimal proceedings in court occurred so quickly that it is unlikely Taylor knew what had occurred until after the fact. The record does not support respondent's claim of waiver.

Having concluded that Taylor's due process rights were implicated by the appointment of a guardian ad litem and that she did not waive her rights, we must determine what process was required. ▮ Due process is a flexible concept which requires balancing of several factors, including (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, (3) the interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[38]

▮ The circumstances under which appointment of a guardian ad litem for a parent in a dependency proceeding may occur may vary widely from case to case. Therefore, we will not attempt to declare a rule applicable to all such cases. Applying the *Malinda S.* factors to the circumstances before us, however, we conclude that due process required that Taylor was entitled to an informal hearing and an opportunity to be heard.[39] A hearing would have provided Taylor an opportunity to explain why a guardian ad litem was not required and would have allowed her to respond to Mr. Meier's belief the appointment was necessary. The court would have had the opportunity to inquire of both the parent and the attorney to gain a full understanding of the circumstances. Also, a record would have been established for appellate review.

---

[36]*Sarracino v. Superior Court, supra,* 13 Cal.3d at page 12.

[37]*Sarracino v. Superior Court, supra,* 13 Cal.3d at page 13.

[38]*In re Malinda S.* (1990) 51 Cal.3d 368, 383 [272 Cal.Rptr. 787, 795 P.2d 1244].

[39]See *In re B.G., supra,* 11 Cal.3d at pages 688-689; *Fewel v. Fewel* (1943) 23 Cal.2d 431, 433 [144 P.2d 592]; *Conservatorship of Moore* (1986) 185 Cal.App.3d 718, 728 [229 Cal.Rptr. 875].

The inquiry we have suggested is consistent with Code of Civil Procedure section 373, subdivision (c), which authorizes the court to appoint a guardian ad litem on its own motion. To exercise this authority, the court must obtain sufficient information that the parent does not understand the proceedings or cannot assist his/her attorney in protecting his/her interests. Inquiry is one way to obtain this information.

A formal hearing was not necessary.[40] A noticed motion with briefing by the parent and attorney was unnecessary. The court or counsel should have explained to Taylor the purpose of a guardian ad litem and why the attorney felt one should be appointed. Taylor should have been given an opportunity to respond. The court retained the right to exclude all other parties to the action from the courtroom during the hearing. These basic procedures would ensure the court does not erroneously deprive the parent of the right to participate in a section 300 proceeding through the appointment of a guardian ad litem.

We do not foresee that this procedure imposes significant additional burdens on the juvenile court. An informal hearing will allow the parent to present the best case and provide the court with the most accurate picture of the circumstances so that it can make an informed decision. Under some circumstances, testimony from other witnesses may be relevant on the limited issue of competency. At a minimum, the court should make an inquiry sufficient to satisfy it that the parent is, or is not, competent; i.e., whether the parent understands the nature of the proceedings and can assist the attorney in protecting his/her rights.

We hold that the failure of the juvenile court to hold a hearing on the motion to appoint a guardian ad litem and to give Taylor an opportunity to be heard violated Taylor's constitutional right to due process.[41]

Our decision should not be construed as criticizing Mr. Meier for bringing this issue to the court's attention. As this court previously stated, "[In a proceeding to terminate parental rights], we must rely upon trial counsel, acting in the best interests of his [or her] client, and upon the court itself, acting to preserve the integrity of the judicial proceedings, to assure that no person incompetent or otherwise incapable of understanding the proceedings

---

[40]See *Conservatorship of Moore, supra,* 185 Cal.App.3d at page 727.

[41]United States Constitution, Sixth Amendment; California Constitution, article I, section 15. See, e.g., *Willner v. Committee on Character* (1963) 373 U.S. 96 [83 S.Ct. 1175, 10 L.Ed.2d 224, 2 A.L.R.3d 1254]; *McLaughlin v. Superior Court* (1983) 140 Cal.App.3d 473, 481-482 [189 Cal.Rptr. 479].

against him [or her] be forced to participate in a proceeding at which significant rights are at stake."[42]

Mr. Meier undoubtedly tried to act in Taylor's best interests when he applied to the court for a guardian ad litem for her. If, in Mr. Meier's opinion, Taylor did not understand the process or she was unable to assist him in protecting her interests, he had an obligation to bring the question of competency to the court's attention.

## C. *The denial of due process requires reversal.*

Reversal is not required if the violation of the appellant's due process rights was harmless beyond a reasonable doubt.[43] On the record before us we cannot conclude that the error was harmless.

The appointment of a guardian ad litem for Taylor apparently affected the manner in which the jurisdictional hearing was conducted. At the end of the proceedings on December 13, Mr. Meier informed the court three more witnesses would testify, including Taylor. On December 16, the guardian ad litem was appointed. On January 12, without offering additional testimony, Mr. Meier and the guardian ad litem agreed to submit to the court's jurisdiction in exchange for an agreement that count II in its entirety and one of the allegations in count I would be stricken and another allegation in count I would be amended. These amendments do not appear to be anything more than an agreement to conform the petition to the proof presented at the prior hearings.

We cannot speculate as to the substance or effect the testimony that Mr. Meier initially intended to present would have had on the court's decision. Nor can we speculate as to whether Taylor would have insisted on testifying and presenting the testimony of the other witnesses or would have agreed to submit to the court's jurisdiction if a guardian ad litem had not been appointed. Such testimony may have had an impact on the court's decision.

Because we find that the violation of Taylor's due process rights was not harmless beyond a reasonable doubt and requires reversal, we do not consider whether Taylor's guardian ad litem could waive her right to trial without her consent. *In re Christina B.*[44] addresses this issue should it arise on remand.

## D. *There was a lack of substantial evidence to support the appointment.*

Taylor argues that the court not only deprived her of her due process rights, but also appointed a guardian ad litem on insufficient evidence. We agree.

---

[42]*In re R.S., supra,* 167 Cal.App.3d at page 979.

[43]*In re Nemis M., supra,* 50 Cal.App.4th at page 1355; *In re Dolly D., supra,* 41 Cal.App.4th at page 446; *In re Amy M., supra,* 232 Cal.App.3d at pages 867-868.

[44]*In re Christina B., supra,* 19 Cal.App.4th at pages 1451-1454.

The court relied on the conclusionary statements of Mr. Meier without determining the factual basis or foundation for his conclusions.[45] The court did not know what steps, if any, Mr. Meier had taken to try to resolve Taylor's confusion or explain the procedures or issues she did not understand. The court did not know why or how Taylor could not assist Mr. Meier in protecting her interests.

Respondent argues the court considered not only the statements of Mr. Meier but also the social studies prepared by the Department. Initially we note that while social studies are admissible on the question of jurisdiction,[46] we question whether these documents, which contain multiple hearsay, are admissible to determine whether an adult is competent. Moreover, the social study naturally focused on the significant problems Taylor had in raising Sara, which, while important to the questions of jurisdiction, have little relevance on the issue of Taylor's competency.

Assuming that the social studies were properly considered by the court, they essentially confirmed testimony that Taylor had psychological problems (major depression [mild recurrent], posttraumatic stress disorder with chemical dependency in remission, and borderline personality disorder) and that Taylor had fragmented thoughts which made it difficult for her to stay focused. At times, Taylor would have chaotic relationships with both children and adults. None of this evidence, however, supports a conclusion that Taylor did not understand the nature of the proceedings or was unable to assist counsel in protecting her interests.

## DISPOSITION

The juvenile court's order appointing guardian ad litem (Dec. 16, 1999) and its jurisdictional (Jan. 12, 2000) and dispositional (Feb. 1, 2000) orders are reversed, and the matter is remanded for further proceedings not inconsistent with this opinion.

Buckley, J., and Levy, J., concurred.

---

[45]See In re Dolly D., supra, 41 Cal.App.4th at page 447 (conclusionary statements insufficient to support determination of jurisdiction).

[46]Section 355; In re Malinda S., supra, 51 Cal.3d at page 382.